Desmond C. Lee (SBN 158952)
dlee@deconsel.com
Yuliya S. Mirzoyan (SBN 247324)
ymirzoyan@deconsel.com
DeCARLO & SHANLEY
A Professional Corporation
533 South Fremont Avenue, Ninth Floor
Los Angeles, California 90071-1706
Telephone:  (213) 488-4100
Facsimile:   (213) 488-4180

Attorneys for Petitioner SOUTHWEST
REGIONAL COUNCIL OF CARPENTERS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHWEST REGIONAL COUNCIL OF CARPENTERS,<br><br>   Petitioner,<br><br>v.<br><br>UPRIGHT SHORING & SCAFFOLD, INC.; AMERICAN SCAFFOLD; and AMSCAFF, LLC.,<br>   Respondents. | Case No. **'17 CV1509 WQHNLS**<br><br>**SOUTHWEST REGIONAL COUNCIL OF CARPENTERS' PETITION TO CONFIRM ARBITRATION AWARD AGAINST UPRIGHT SHORING & SCAFFOLD, INC., AMERICAN SCAFFOLD AND AMSCAFF, LLC** |

Petitioner Southwest Regional Council of Carpenters for its petition to confirm an arbitration award against Respondents UpRight Shoring & Scaffold, Inc., American Scaffold and AmScaff, LLC, alleges as follows:

## JURISDICTION AND VENUE

1. This is a suit to confirm an arbitration award pursuant to the terms of a collective bargaining agreement. Venue is proper with this Court because the defendants reside within this judicial district. Jurisdiction is proper with this Court pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

## PARTIES

2. Petitioner Southwest Regional Council of Carpenters ("Union" or Petitioner) is a voluntary association and a labor organization as that term is defined in Section 2(5) of the Labor Management Relations Act, as amended, 29 U.S.C. § 152(5). The Union is the collective bargaining representative of certain Respondent UpRight Shoring & Scaffold, Inc. ("UpRight"), employees, and the employees of American Scaffold and AmScaff, LLC ("AmScaff"), since they are joint employer/alter egos of UpRight.

3. Respondents UpRight, American Scaffold and AmScaff are an employer within the meaning of Section 2(2) of the Labor Management Relations Act, as amended, ("LMRA"), 29 U.S.C. § 152(2). The joint employer/alter egos is incorporated in, and has its principal place of business in, the state of California.

## FACTS

4. Respondent UpRight has been a signatory to several collective bargaining agreements with the Union. These include the Carpenters Memorandum Agreement For Scaffold Contractors 2006-2010 ("Scaffold Agreement") and the Carpenters Memorandum Agreement 2006-2010 ("Memorandum Agreement"). Both were signed

PETITION TO CONFIRM ARBITRATION AWARD        1

on or about April 8, 2008.

5.   Paragraph 1 of both the Scaffold Agreement and the Memorandum Agreement incorporates by reference the terms of the Southern California Carpenters Master Labor Agreement ("MLA") between United General Contractors Association, Inc., and the Union, dated July 1, 2006, and any extensions, renewals or subsequent Master Labor Agreements, and the provisions of the trust agreements governing several employee benefit plans sponsored by the Union.  (*See* Declaration of Yuliya Mirzoyan ("Decl.") at ¶ 2, Ex. 1 at p. 1; ¶ 3, Ex. 2 at p. 1.)

6.   Section 102. 3 of the MLA provides as follows regarding the applicability of the MLA:

> In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any on-site construction work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stock-holders) exercises either directly or indirectly (such as through family members) any legally sufficient degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work on that job or project.

(Decl., ¶ 4, Ex. 3 at pp. 3-4.)

7.   Section 102.3.1 of the MLA provides, in relevant part, as follows:

> All charges of violations of Paragraph 102.3 of this Article, shall be considered as a dispute under the Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article VI of this Agreement.

(Decl. at ¶ 4, Ex. 3 at p. 4.)

8.   Section 102.3.2 of the MLA states as follows:

> If, as a result of violations of Paragraph 102.3 it is necessary for the Union and/or the trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with subsection 102.3.1 above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants and attorneys fees incurred by the Union and/or fund trustees, plus cost of the litigation, which have resulted from the bringing of such court action.

PETITION TO CONFIRM ARBITRATION AWARD       2

(Decl. at ¶ 4, Ex. 3 at p. 4.)

9.  Section 601.4 of the MLA states, in part, that "[t]he Contractor and the Union agree to submit all disputes concerning the interpretation or application of the Agreement to arbitration under this Article VI." (Decl. at ¶ 4, Ex. 3 at p. 23.)

10. Section 1401, the MLA's termination provision states, in relevant part, as follows:
> This Agreement shall be effective as of the first day of July, 2006, and remain in effect until June 30, 2010, and shall continue from year to year thereafter, unless either of the collective bargaining representatives shall give written notice to the other of a desire to change, amend, modify or terminate the Agreement at least sixty (60) days prior to the June 30, 2010, or June 30th of any subsequent year. In the event no agreement is reached by June 15, the Association or the Union may, on or after June 15, give a written notice of intention to terminate the Agreement.

(Decl. at ¶ 4, Ex. 3 at p. 35.)

11. The MLA was extended, up to and through the 2012-2016 MLA. The relevant provisions of the 2012-2016 MLA—the portions of Sections 102.3, 102.3.1, 102.3.2, 601.4, and 1401 cited above—remained the same as in the previous agreement. (Decl. at ¶ 5, Ex. 4 at pp. 3-4, 23, 35.)

12. On or about November 25, 2013, the Union filed a grievance against UpRight, alleging that it violated all provisions of the MLA by "performing bargaining unit work through non signatory alter ego/single employer/successor entities including American Scaffold, America's Choice Scaffold and another entity." (Decl., ¶ 6.)

13. On or about September 24 and 25, 2014, January 6 and 7, February 9, November 17, 2015, and February 29, March 31, and April 1, 2016—nine days total—a hearing was held on the grievance before Arbitrator Louis M. Zigman. Notices of the arbitration hearing were also sent to American Scaffold and AmScaff, which is shown by the letters American Scaffold and AmScaff sent objecting to the arbitration. (Decl., ¶ 7.) At the hearing, both parties presented evidence and examined witnesses. After the hearing, both parties submitted written closing and written reply briefs.

14. After hearing the evidence and arguments presented by both sides, the Arbitrator decided in favor of the Union, stating the following:

> I also find and conclude that the weight of the evidence demonstrated that UpRight Shoring & Scaffold, American Scaffold and AmScaff LLC were and are joint employer/alter egos of each other.

(Decl., ¶ 8, Ex. 7 at p. 57.)

15. On or about February 6, 2015, UpRight filed a Chapter 11 voluntary petition in the United States Bankruptcy Court for the Southern District of California, Case No. 15-00717-CL11. The arbitration hearing had not yet been completed at the time the petition was filed. The Union therefore filed a motion for stay relief in order to be able to continue with the arbitration and to confirm any eventual award in court. The Bankruptcy Court granted the motion, concluding, in relevant part, as follows:

> The court thus grants [the Union] stay relief to continue with the arbitration and to confirm any eventual award in court. [The Union] may then return to this court for final adjudication of its proof of claim and to seek further stay relief to enforce any arbitral award as appropriate.

(Decl., ¶ 9, Ex. 8 at p. 6.) The Union therefore files this lawsuit to obtain a Judgment in this Court, with the understanding that enforcement of the award will take place in Bankruptcy Court.

## CAUSE OF ACTION
(Section 301–Confirm Arbitration Award)

16. Paragraphs 1-15 are realleged and incorporated herein by reference as if set forth in full.

17. Arbitrator Zigman's award draws its essence from the parties' collective bargaining agreement; Arbitrator Zigman did not exceed the boundaries of the issues submitted to him; the award is not contrary to public policy and was not procured by fraud. In any case, the time to vacate or correct the award under California Code of Civil Procedure § 1288 has expired.

18. This Court has the power to confirm Arbitrator Zigman's award pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

///

///

# PRAYER FOR RELIEF

WHEREFORE, the Union prays for judgment as follows:

1. For an order confirming the arbitration award.
2. For judgment against UpRight Shoring & Scaffold, Inc., American Scaffold and AmScaff, LLC in conformity with this order.
3. For costs and attorney's fees incurred in this suit and in the underlying arbitration.
4. For prejudgment and post-judgment interest.
5. For such other and further relief as the Court may deem proper.

DATED: July 25, 2017

DeCARLO & SHANLEY
A Professional Corporation

By: /s/ Yuliya Mirzoyan
Yuliya Mirzoyan
Attorneys for Petitioner SOUTHWEST REGIONAL COUNCIL OF CARPENTERS